Thomas Poulton is here for the appellate. Ryan David Barak is here for the appellee. And Mr. Poulton, you may begin when you're ready. Good morning, Your Honors. May it please the Court, Counsel. My name is Tom Poulton. I'm here on behalf of Pasco Sheriff's Deputy James Dunn. He was the arresting deputy in the incident below. This is an appeal of a denial of qualified immunity on a motion to dismiss. The question, under Pearson v. Callahan, this court can address either question, whether there was a constitutional violation and then whether it was clearly established. We ask that the court answer the first question. It would be helpful, I think, to law enforcement to know the answer to this question squarely. And it would also be a benefit, of course, to the parties in this particular case. And that is, may a deputy require that a passenger in a lawfully stopped vehicle identify himself? Without any reasonable suspicion that the passenger of the vehicle was engaged in criminality. That is correct. And the difference is, Your Honor, between this case and the other cases that the district court spoke of, and that the plaintiff speaks of in this case, is that this is not a traditional parry stop of a . . . There was no reasonable suspicion here, right? Not of the passenger. That the passenger had engaged in any criminal conduct. Correct. But the nuance is . . . He could ask for the identification, and if he says no, he can't arrest him. That's your argument? No, that's the . . . He can ask. The officer can find out who that is. The passenger. You agree with that? Well, of course. Of course he can ask. He can say, I want your ID. I don't believe . . . He says, I'm John Doe. He says, no, you're not John Doe. You've got a name. I want your ID. Nothing wrong with that, is there? The defense position is he can not only ask, but he can require it. No, forget the require. Well, I mean . . . In the custody. Right. Okay. In the Corona case, which was . . . That's different than just asking for the identification. Do you agree? Of course. Okay. So, it's the law that the passenger cannot . . . If there's no reasonable suspicion that you've engaged in any criminal conduct, the officer can ask, but the person can't say, well, no, I'm not gonna tell you my name? No, Your Honor, and I'll give you an example of why. Okay? The deputy can make Mr. Johnson stay there for the 20 minutes to write the ticket. He can order him out of the vehicle. He doesn't have reasonable suspicion of any wrongdoing by Mr. Johnson. He doesn't have . . . He doesn't have . . . I'm with you there. Okay. And he can order him to stay in the vehicle. He can do that. I agree. So, the point is that the traditional Terry Stock principles of reasonable suspicion, limiting what law enforcement can do in that situation, has to do with presupposing that the purpose of asking that question or requiring the identification is that that particular person is under suspicion. That's not the reason that a deputy should be allowed to . . . He may be doing it for safety purposes. That's exactly why. So, there's nothing wrong with asking for the identification. Your argument is, or the argument is, you can't arrest. Well, that's the plaintiff's argument. Our argument . . .  Our argument is that . . . That you can't arrest. Of course. Because the . . . You can arrest him because he won't tell me your name. Correct. Because it's an officer safety reason. And I go back to the fundamental case law about the Fourth Amendment and privacy interests. You've got three Supreme Court cases that support that the Fourth Amendment does not allow an officer to stop and demand identification from someone without any specific basis for believing that they're engaged in criminal conduct. Right, but . . . Ask for an ID. You've got Brown versus Texas, Florida versus Bostick, and Hibble versus the Sixth Judicial Circuit. But you have to . . . Well, Hibble is, I think, helpful to the defense ultimately. Because the . . . Just a moment. But Hibble says, excuse me, says an officer may not arrest a suspect for failure to identify himself if the request for identification is not reasonably related to the circumstances justifying the stop. But again, that's based upon . . . That's like a stop-and-frisk type traditional Terry stop analysis. That you have a particularized suspicion of that person, you're doing an investigation of that person, and those are where those limits apply. The case is cited by Judge Wilson just now, right? But that's not the reason to ask for or require identification of the passenger in a stopped vehicle. It's an officer safety issue. It's a completely different principle. And it's very, I think, frustrating from the defense perspective here that we keep imprinting onto a . . . What does the identification, the name of the passenger, have to do with the reason for the stop, which is your license tag was obscured? Nothing. But that's not the reason to ask for or to require the identification. It's not part of the investigation of the tag violation. It is for officer safety, simply because he happens to be in the vehicle. So what he does, before he arrests them, dad, who's driving the car, said, my son's name is Marcus Johnson. So he's got the name. He's got his name. Then he does a record check with Tallahassee. And Tallahassee says, yeah, this is Marcus Johnson. Never been arrested. This is Marcus Johnson. You know who he is. You've got his name. And then the officer can say, I'm gonna arrest you anyway. Two points. First of all, the obstruction has already occurred when he repeatedly refuses to provide his identification. The fact that the father may cure, in the substantive sense, the absence of that information later, cannot become the rule. Because then the question would be, is there some third way for the officer to find out who he's dealing with? And the obstruction has still already occurred. And the second thing is that there's not a requirement that the deputy overlook the fact of the obstruction, simply because he finds out the name later on and checks it and verifies it. What if a false name is given? What if the father doesn't offer the identification? He doesn't. He doesn't. He checked. Dad says, this is my son. His name is Marcus Johnson. And he checks with Tallahassee. It's Marcus Johnson. He already knows his name. The fact that in this case, the absence of him providing that information on the front end was ultimately cured, doesn't change the fact that initially, Mr. Johnson obstructed the deputy in his investigation related to the traffic stop, because of the officer's safety issue. It's not a question of investigating Mr. Johnson. It's purely a question of knowing who you're detaining. If you can detain him for 20 minutes, order him in and out of the vehicle, the knowledge of who he is, so that you can verify that he doesn't have warrants and isn't about to do something. How is the officer's safety jeopardized when we verified his name and we got his name and we know who he is? How is the officer's safety jeopardized under a circumstance like that? Once that happens, I agree with you, it's not jeopardized. But prior to that, it is. The obstruction has already occurred. But the arrest took place after he got his name, we know who you are. I mean, I might be able to accept your argument if he arrested him before he got his name, but he got his name, he verified it with Tallahassee, he says, I'm gonna arrest you anyway. It seems like he arrested him because he didn't wanna get showed up by the TV cameras that were out there viewing the case. Well, Your Honor, I return to the basic principle that probable cause is objective, you know, Wren versus United States. And so, whatever the subjective motivation you might read into the video that you watch of this incident, the fact is that Mr. Johnson repeatedly refused to identify himself. The fact that the father later on says, okay, this is who he is, they verify it and he still arrests him, doesn't mean the obstruction didn't occur prior to that. So I appreciate that some would view the video and think, well, you could have done something differently, but that's always true in an arrest situation, a discretionary arrest situation. You could always say, well, no harm, no foul, effectively. But this gets back to the principle, can the deputy require that the passenger identify himself? And the mistake that we feel that was made in Corona, your sister court, is again, imprinting onto this situation of officer safety the traditional rules that apply when you're doing an investigation of a person. I agree with you, there was no reasonable suspicion of criminal activity by the passenger. The reason to ask for his identification is for officer safety purposes. And I have very little time left, I just want to also make the point that we do not believe that the law was clearly established. If you were to go to the second question under Pearson, if you look at the case law, which holds that the deputy can order the person in or out of the vehicle, there's some state court decisions that certainly would have suggested the deputy done that he could require that the person provide identification in the cases that are relied upon in the district court or from other circuits, and a lot of them post-date this incident. All right, thank you. Thank you, Mr. Fulton. Mr. Barak. May it please the court, Ryan Barak on behalf of Marcus Johnson. This is a case where a deputy sheriff seeks to have this court enact a blanket rule allowing the arrest of anyone who does not immediately produce their identification upon demand, even when there is no suspicion of any criminal activity. At the time of Mr. Johnson's arrest on August 2nd, 2018, the Fourth Amendment law was clearly established that there was no probable cause for arrest under the Florida resisting arrest statute for the failure to immediately provide law enforcement with identification where there was no suspicion of criminal activity. The district court correctly denied the motion to dismiss, and that's what we're here on today. In this case, the two factors that the court looks at are whether or not there was a violation of a constitutional right, and whether or not that right was clearly established. The court is required, as the district court did, to accept all factual allegations as true and draw all reasonable inferences in the plaintiff's position. The constitutional right to be at issue is the Fourth Amendment, the right to be free from arrest without probable cause. It's clear in the text of the amendment. It's a foundational principle of our nation, and it was clearly established by numerous prior Supreme Court cases. In Brown versus Texas in 1979, the United States Supreme Court unanimously held that the guarantees of the Fourth Amendment do not allow law enforcement to stop and demand identification from an individual without any specific basis for believing they were involved in criminal activity. In Brown, the court noted that whatever purposes might be served by demanding identification from an individual without any specific basis for believing he's been involved in criminal activity, the guarantees of the Fourth Amendment do not allow for it. In Hybl, the U.S. Supreme Court again said, as Judge Branch read out, you cannot, you cannot arrest a suspect for failure to identify himself if the request for identification is not related to the circumstances justifying the stop. And here, there was absolutely no question that there was no suspicion at all of anything. The immediate demand upon encountering my client was, you got ID. Well, Gunn says his safety was implicated. Well, let's be clear. There was no. Officer safety is not some incantation that you can stay and then the Constitution doesn't apply. There were no officer safety issues. This was a well-traveled road at nine o'clock in the evening. Officer Gunn was accompanied by two other officers, a dog, and a television crew. There was a, my client was in a minivan with his father and his uncle in the back seat. They were driving rather slowly because they had a trailer behind them. There was no suggestion of officer safety issues at all. My client did nothing threatening at all. He was literally sitting there waiting for the officer to come up, who immediately upon encountering him, the first words out of his mouth were, I'm gonna need you to see my ID. Or, gotcha, I wanna make sure I don't misstate it. He asked him if he had his ID on him too. Immediately. There's no officer safety. There's nothing about this case that suggests in any way that officer Gunn's safety was threatened at all. This case is exactly what the 10th Circuit dealt with in Corona. And to go to Judge Choflat's point, he can ask, he can ask for the identification. But if he says no, then he's gotta move on and finish writing the ticket for the father if he wants and doing whatever else it is that he wants to do. Can we rely on Corona as clearly established law if it's an out-of-circuit case and not a Supreme Court case? Not Corona directly. But Corona relies upon the Supreme Court cases, which are clearly established, right? Corona says Hibble and Brown and Florida versus Bostick. And so does Shufflebeam versus Harris, which is the 8th Circuit, which again says, look at the Supreme Court cases, right? So we're relying on the basic principle that is in the Fourth Amendment itself. I mean, we don't even need to go to case law. We've got the Fourth Amendment itself saying this. We've also got the Fifth Circuit in Johnson saying exactly the same thing. Those other courts are all relying on the same Supreme Court cases that the district court relied on. So it doesn't, and let's be clear, there is case law from this court about the requirements with respect to resisting, that resisting actually requires resistance. It requires something more than just words. And here, there was no resistance. There was no physical action at all. There was a, I'm not gonna tell you. And then Judge Wilson, as you mentioned, immediately thereafter, immediately thereafter, and if you watch the video, it's literally moments, the father says, I don't wanna go to jail. His name is Marcus Johnson. So there's no obstruction. That's what he was charged with. There's no obstruction. The officer was at most obstructed for an instant until the father said, I don't wanna go to jail. His name's Marcus Johnson. The, there was no reasonable suspicion at all that my client had done anything wrong, and he should have been free to go. And that is, again, you look at Hibble, you look at Corona, you look at Shufflebeam, those out-of-circuit cases which are all relying on those basic Supreme Court precedent cases. In this case, compelling the identification of Johnson, no way furthered the investigation. You agree that the officer probably could have asked him if he had a weapon, or asked the driver of it. All those things could have been asked. He could have asked the driver of them. And he can ask, right? I mean, he's allowed to ask reasonable questions. It's obvious, because in this day and age, you never know what's in the car. Right, and under Rodriguez, the Supreme Court case, he's not allowed to prolong the stop unnecessarily to ask these other questions, right? But he's allowed to ask that question sort of in the flow of the stop. He's allowed to ask those questions, but he can't unnecessarily prolong the stop, which is what happened here. I'm not talking about prolonging it. I'm just talking about the officer taking some steps to ensure safety. He can, yes. And he can ask all kind of questions of these occupants. But if he says, I'm not going to tell you my ID, he can't arrest him for that. Well, if the occupant said, he asked him, are you armed? And the occupant said, I'm not going to tell you, it gets dicey then. You know, Judge Trofanoff. That's another case. And there's a. All I'm saying is, that's kind of on the edge. There's an interesting first ECA case that says in light of as many handguns and the number of people who have concealed carry permits in this state, that carrying a gun doesn't necessarily give rise to reasonable suspicion, which is an interesting view and well beyond the scope of what we're talking about today. But something to chat about over a glass of wine or beer. In this case, though, we don't have that. He verified the identity, but they still pulled him out of the car. And they forced him to exit the minivan. They took his property. They placed him under arrest. They put him in handcuffs. They put him back in the vehicle. Then they had the dog sniff the car. All these other things prolonging, prolonging, prolonging. None of that was related to the purpose of the stop, which was the partially obscured license plate on the trailer. And again, this was an arrest made without probable cause. And it violates the law. In Olson v. Stewart, this court said at the time of Ms. Olson's arrest in December of 2012, any reasonable officer would have known that probable cause for a violation of the statute relating to resisting arrest could not be based on mere words. And here, that's all it was. It was mere words. He just said, I don't have to tell you. And he literally said the Fourth Amendment. Like Mr. Johnson specifically said, this is the Fourth Amendment. And the cases are clear that this was an unconstitutional arrest. And they were well-established. And Mr. Johnson properly survived the motion to dismiss. This case should be remanded back to the district court to proceed. Unless there are other questions from the court, I thank you very much for your time. Thank you, Mr. Barak. Mr. Poulton. Here's the difference. Mr. Johnson was lawfully detained at the time that the deputy asked for his identification. It's not a stop and frisk case, not coming up to a person in an alley and demanding to see an identification with no reasonable suspicion of criminal activity, where you're just trying to get identification to find out randomly if the person has warrants. Mr. Johnson was already detained lawfully pursuant to the traffic stop. If we start from that principle, the question is, can you demand identification from a person you have lawfully detained? The answer to that question is yes. And it's interesting, the Olson case that counsel pointed out to you about verbal is usually not going to be. There's one fact, critical fact, that you're leaving out though. After that, he detained him. He had him get out of the car. Then he found out what his name was. This is Marcus Johnson, and I verified this. And this is Marcus Johnson. So he's free to go then. You can't arrest him after that. Because the obstruction has already occurred. The fact that his refusal to identify himself is remedied by the father doesn't change the fact that prior to that, Mr. Johnson repeatedly refused to identify himself while being lawfully detained. Not for an investigation into him. I respectfully, it's the same mistake that keeps getting made in this case, is that this is not an investigation of Mr. Johnson's criminal activity. It is a check for warrants for officer safety purposes for a person who is already lawfully detained. The Olson case, about words not being enough, cites some Florida cases on that point. Read that case closely. It says there are some exceptions, one of which is where the person is already lawfully detained. So words can be obstruction where the person is already lawfully obtained, even under this court's decision in Olson, citing to the Florida cases. So if we accept the premise that Mr. Johnson can be ordered in and out of the car, forced to stay there for 20 minutes, and that's not a violation of the Fourth Amendment, his privacy rights under the Fourth Amendment. You take the balancing test from MIMS, the Supreme Court case, and you weigh the value to the public in terms of law enforcement safety versus the level of intrusion. And you look at, he's already got to stay there for 20 minutes, however long it would take to typically write a ticket, 15 minutes. And that's not a violation of the Fourth Amendment. But wanting to know who you're dealing with is doesn't make any sense. Was dad arrested? Dad, was he arrested? The father, I don't know. I don't believe so. Presumably given a ticket. I actually don't know the answer to that question, but I don't know. He wasn't even given a ticket for driving with an obscured, what was there, a trailer on the back of his truck? And the officers couldn't see the license plate because the trailer was too close to the truck. There were two things. One was that, but also if you look at the photograph taken from body cam that is in the answer brief, please look at the electronically filed version. It's much clearer than a photocopied one. The lower right hand tag on the back of the trailer is bent up, obscuring at least one of the numbers. And the district court found, based on the allegations of the complaint, that the traffic stop itself was lawful. And I've really not heard, I don't think it's plaintiff's position in this case that traffic stop itself was unlawful. The question is about requiring as opposed to asking for identification. And again, I just want to emphasize that our position is that it's not asking for or demanding identification because of a criminal investigation of the passenger. It's because the passenger is already lawfully detained. And once he is lawfully detained, they should be able to know who he is for officer safety purposes. At a minimum, our position is the law was not clearly established on that particular issue. I mean, frankly, if you read the Corona case, they have to go into it in great detail to come to the conclusion that they did. And so we would submit that it is not as obvious from Hebel or these other cases, particularly that deal with stop and frisk situations, that it would be clearly established under the relevant standard to Deputy Dunn that he could not arrest Mr. Johnson refusing to identify himself. Thank you. Thank you, Mr. Poulton. Mr. Barak.